OPINION OF THE COURT
Robert G. Hurlbutt, J.
Defendants were convicted after trial of conspiracy, second degree, the indictment alleging they conspired to murder one Richard Clair. Both have brought CPL article 440 motions to vacate their respective convictions and, alternatively, their respective sentences. Joint hearings on the motions were conducted in February and April 1986, and the matter finally submitted for decision on May 5, 1987.
i.
On February 19, 1980, while in custody after his arrest on the charge of conspiracy to murder Richard Clair, defendant D’Amico gave a recorded statement to law enforcement personnel and the Assistant District Attorney in which he confessed to the murder of Dawn Grillo. D’Amico gave additional statements concerning that murder on February 20 and 22, 1980, one written and one tape recorded. D’Amico did not, at any time, confess to or give a statement concerning his alleged involvement in the Clair murder conspiracy.
Prior to trial of the Clair conspiracy indictment, both defendants demanded discovery pursuant to CPL 240.20. CPL 240.20 (1) (a) provides that, upon demand to produce, the prosecutor shall disclose "Any written, recorded or oral statement of the defendant, and of a co-defendant to be tried jointly, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity”. The District Attorney did not disclose the D’Amico confessions to the Grillo murder to either defendant, either prior to or during the trial. In fact, defendants were not provided with copies of the written statements and transcripts of the oral statements until after they were indicted for the *18 murder of Dawn Grillo, more than a year after the verdict in the instant case.
Defendants contend that the District Attorney’s failure to disclose the D’Amico confessions to the Grillo murder, despite demand for any such statements pursuant to CPL 240.20 (1) (a), constitutes "[ijmproper and prejudicial conduct not appearing in the record * * * which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom” (CPL 440.10 [1] [f]). Defendants further argue that the prosecutor’s failure to disclose D’Amico’s statements constitutes a violation of defendants’ due process right to a fair trial. (CPL 440.10 [1] [h].)
The prosecutor contends that his CPL 240.20 (1) (a) duty to disclose statements of the defendant or codefendant does not extend to confessions to a wholly unrelated crime, but is limited to statements which in some way pertain to the particular criminal prosecution in question. Defendants, however, rely upon a literal interpretation of the language of CPL 240.20 (1) (a), which requires disclosure of "Any * * * statement of the defendant”. They point out that the statute contains no provision limiting its application to statements relating directly to the criminal conduct described by the indictment.
The court has examined the D’Amico statements of February 19, 20 and 22, 1980, and finds them to be unrelated to the Clair conspiracy in their content. Furthermore, the statements do not inculpate codefendant Bretti in the Grillo homicide.
The novel issue thus presented is whether CPL 240.20 (1) (a) compels disclosure of literally any statement ever made by the defendant to a public servant engaged in law enforcement activity, regardless of relevance to the criminal prosecution in question. It appears to this court that there must, of necessity, be logical parameters to the prosecution’s duty under CPL 240.20 (1) (a). To require the prosecution to give notice of any statement ever made by defendant, regardless of its remoteness in time or substance to the proceeding against defendant, is to impose an onerous burden upon the prosecution not in keeping with the general policy behind the discovery statute. This is especially clear where, as here, the statements in question, although wholly unrelated to the criminal prosecution under way, are very relevant to an ongoing homicide investigation.
The parameters to the prosecution’s duty to disclose under *19 CPL 240.20 (1) (a) must be examined in light of statutory policy and the treatment of the statute in prior cases. Discovery article 240 of the CPL has been said to represent "a rather moderate, middle of the road approach halfway between the extreme liberal position which advocates almost unlimited discovery and the extreme prosecutorial approach which would permit virtually none.” (Mem of Commn on Revision of Penal Law and Criminal Code, Mar. 1970 [1971 Gilbert Criminal Law and Procedure, at 1-232, ¶ 8].) The court in People v Bennett (75 Misc 2d 1040) accurately observed that New York is not an "open file” State with regard to criminal discovery. "No court in this State, nor any Federal court, has ever required the prosecution to afford a general unlimited right of discovery to a criminal defendant.” (People v Bennett, supra, at 1047.)
Exhaustive review of the cases addressing the discovery of defendants’ statements reveals that prior decisions have dealt almost exclusively with statements which were directly related to the crime charged (e.g., People v Copicotto, 50 NY2d 222; People v Di Matteo, 80 Misc 2d 1029; People v Wyssling, 82 Misc 2d 708; People v Bennett, supra; People v Zacchi, 69 Misc 2d 785; People v Ames, 119 AD2d 755). The sole exception is the case of People v Sapia (41 NY2d 160 [1976], cert denied 434 US 823) where the Court of Appeals determined it was not error to deny defense counsel access to a tape recording of a postindictment interview between defendant and the police. The trial court had reviewed the tape-recorded statement of defendant and concluded it was of an interview "in which the police sought defendant’s co-operation in wholly unrelated matters, and that there was nothing therein having any relevance to the case on trial.” (People v Sapia, supra, at 166.) The Court of Appeals further held that the assertion that the recorded statement might contain material useful to the prosecution in cross-examination of the defendant, and that defendant’s option to testify were thereby chilled, was "sheer, unsupported speculation.” (People v Sapia, supra, at 167.)
Although the Sapia decision was rendered under CPL 240.20 (1) (b) (L 1970, ch 996), whereunder criminal discovery demands were required to be made by motion to the court, the reenactment of the statute in 1979 (L 1979, ch 412), permitting discovery on demand and discovery of the statements of codefendants, did not undermine the Sapia court’s ruling on the discovery of statements wholly unrelated to the criminal prosecution. (See, mem of Office of Ct Admin, 1979 McKinney’s *20 Session Laws of NY, at 1888.) The Sapia case differs from the instant case in that in Sapia (supra), there was a pretrial determination that the statements were not relevant to the proceeding. However, the decision provides sound precedent for the principle that the prosecutor’s duty to disclose under CPL 240.20 (1) (a) does not extend to statements of defendant concerning "wholly unrelated” subject matter and irrelevant to the prosecution under way.
In addition to the statutory policy of moderation and the Sapia precedent, the court looks to the statutory purpose as enunciated in People v Remaley (26 NY2d 427, cert denied 400 US 948). In Remaley, where defendant was granted pretrial disclosure of his confession to the crime with which he was charged, the court held that "a defendant is entitled to inspect any statements he may have made to the police or other law enforcement officers in order to enable him to intelligently prepare his defense. ” (People v Remaley, supra, at 429; emphasis added.) The court observed that defendant is entitled to inspect his statement in order to determine whether a question of voluntariness may be raised, how its content impacts upon guilt and whether it contains prejudicial matter to which he might object. The Remaley court’s concern for fairness to a defendant in affording him the ability to "intelligently prepare his defense” is not advanced by the disclosure of statements wholly unrelated to the crime with which defendant is charged. Where, as in the instant case, the statements in question are unrelated, irrelevant and otherwise inadmissible on the crime for which defendant is being tried, their disclosure is not required to enable defendant to "intelligently prepare his defense” to the charges against him. This is not to say that where the statements in question do relate to the crime for which defendant is charged, defendant must show a need for the statements in preparation of his defense, for in that situation, the statements are always discoverable.
Having determined that D’Amico’s statements are wholly unrelated and irrelevant under Sapia (supra) and not pertinent to the defendant’s or the codefendant’s ability to "intelligently” prepare his defense under Remaley (supra) and giving effect to the statutory policy of moderation, this court concludes that the statements in question are not within the parameters of required disclosure under CPL 240.20 (1) (a).
The determination that certain materials are not within the parameters of required disclosure under CPL 240.20 (1) (a) necessarily raises the issue of who decides whether a particu *21 lar statement is required to be disclosed. The defendants point out that CPL 240.35 provides a procedure whereby the prosecutor may refuse to disclose any information he believes is not discoverable under CPL 240.20, and that the prosecutor’s failure to proceed under CPL 240.20 with regard to the disclosure of D’Amico’s statements was error. This court would agree that, where any question at all arises as to the discoverability of statements of defendant, the prosecutor should file a written refusal under CPL 240.35, thus providing the defense with an opportunity to seek review by the court. The determination as to whether statements of defendant fall within the disclosure statute is one which should be made by the trial court. That procedure not having been followed here, this court must determine whether the prosecutor’s failure to follow CPL 240.35 requires a vacatur of defendants’ convictions under CPL 440.10 (1) (f) and (h).
Defendants’ convictions must be vacated if the prosecutor’s "improper” conduct is also "prejudicial conduct * * * which * * * if it had appeared in the record, would have required a reversal * * * upon an appeal” (CPL 440.10 [1] [f]), or if defendants’ due process rights were violated (CPL 440.10 [1] [h]). Defendants maintain that they were prejudiced by the nondisclosure of D’Amico’s confessions to the Grillo murder because the Grillo matter entered into the Clair trial on two occasions. Defendants claim that the prosecutor made the Grillo case "related” to the Clair case when he successfully opposed a defense motion for redaction of reference to Dawn Grillo contained in tape recordings of conversations among defendants and the chief prosecution witness played at the Clair trial. The trial court determined that potential prejudice to defendants was outweighed by the need to retain the Grillo reference in order to preserve the meaning of the taped conversation as to the Clair case. This court cannot disturb the trial court’s determination on the motion for redaction of the Grillo reference. Defendants have not shown how the reference to Grillo in the tapes played at trial rendered the nondisclosure of the D’Amico confessions to the Grillo murder prejudicial to them in the Clair case.
Defendants further argue that the Grillo case became "related” to the Clair case when the prosecutor inquired of defendant Bretti on cross-examination whether he was involved in the Grillo homicide. In light of defendant Bretti’s waiver of a Sandoval hearing and the content of his direct examination, the cross-examination on his involvement in the *22 Grillo murder was appropriate impeachment material. The cross-examination of Bretti on the Grillo homicide for purposes of impeachment did not render the nondisclosure of the D’Amico confessions prejudicial to either defendant in the Clair case. Furthermore, defendant Bretti’s argument that the D’Amico confessions to the Grillo murder were Brady material as to him, because they exonerated him in the Grillo case, is incorrect. The law is clear that "evidence that the defendant may not have committed a crime he was not charged with is irrelevant and inadmissible * * * and is not exculpatory to the charged crime” (People v Reynolds, 104 AD2d 611, 614; see also, People v Battee, 122 AD2d 526 [4th Dept 1986]).
Defendant D’Amico’s claim that the nondisclosure of his statements on Grillo to his trial counsel in the Clair case interfered with his pretrial plea decision because he might have bargained his cooperation in Grillo for consideration in Clair is sheer speculation. As such, it cannot provide a sufficient basis for a finding of prejudice. (See, People v Sapia, 41 NY2d 160, 166-167, supra.) Moreover, D’Amico himself obviously had knowledge of his confessions to the Grillo murder and apparently chose not to reveal the existence of those confessions to his trial counsel for use in plea bargaining.
The court finds no merit to defendant Bretti’s argument that, had D’Amico’s confessions to the Grillo murder been revealed to him, he might have made a successful pretrial motion for a severance. The D’Amico statements were not prejudicial to Bretti and would not have provided grounds for a severance.
Finally, D’Amico argues that the nondisclosure of his confessions to the Grillo murder chilled his right to testify on his own behalf in the Clair trial. D’Amico asserts that, after codefendant Bretti testified and was cross-examined on his involvement in the Grillo homicide, he, D’Amico, decided not to testify because of his belief that he would be cross-examined on the Grillo murder. This argument must fail because, as the result of the Sandoval ruling as to D’Amico, the prosecutor was effectively precluded from cross-examining D’Amico on his involvement in the Grillo murder. (People v Cavallerio, 71 AD2d 338; People v Sandoval, 34 NY2d 371.) In a pretrial proceeding, the trial court ordered the prosecutor to provide defendant D’Amico with any prior criminal record or immoral acts he intended to use at trial. The trial court then strictly limited the prosecution to use of a single misdemeanor conviction. Both the prosecutor and defendant’s counsel were *23 cognizant of the Sandoval ruling. Had D’Amico chosen to testify, he would have received the full benefit of that ruling. Thus, it cannot be said that D’Amico’s right to testify in the Clair case was prejudiced or adversely affected by the nondisclosure to his counsel of the Grillo murder confessions.
Defendant Bretti’s related argument that he was prejudiced by the alleged chilling of D’Amico’s right to testify because D’Amico failed to take the stand and offer testimony favorable to Bretti is not only highly speculative, but fails because it is premised upon a finding of prejudice to D’Amico which this court has declined to make.
As the court finds no prejudice to defendants in the contentions hereinbefore addressed and no merit in additional contentions made by defendants in their briefs, there is no basis on which to vacate the convictions under CPL 440.10 (1) (f). (People v Astle, 117 AD2d 382 [1986]; People v Jacobson, 109 Misc 2d 204.)
Defendants also contend that, for the same reasons addressed heretofore under CPL 440.10 (1) (f), the prosecutor’s failure to disclose the D’Amico statements resulted in a deprivation of their due process rights. (CPL 440.10 [1] [h].) The D’Amico confessions were not any element of the case against the defendants in the Clair trial, nor were they pertinent to the "intelligent” preparation of their defense under the Remaley analysis (supra). The finding that the prosecutor’s failure to disclose the D’Amico statements, or file a refusal to do so under CPL 240.35, did not result in prejudice to the defendants compels the conclusion that the nondisclosure was not of sufficient significance to result in a denial of defendants’ due process rights to fundamental fairness. (People v Payne, 52 NY2d 743; People v Consolazio, 40 NY2d 446; People v Boice, 89 AD2d 33; People v Barton, 56 AD2d 958.)
ii.
Defendants’ second claim is that the prosecution failed to disclose two previously recorded statements of the chief prosecution witness, despite defendants’ demand therefor pursuant to CPL 240.45 (1) (a), and that such failure requires that the judgment be vacated pursuant to CPL 440.10 (1) (f). CPL 240.45 (1) (a), which is the codification of the rule set forth by the Court of Appeals in People v Rosario (9 NY2d 286), provides that the prosecution shall make available to defendant: "[a]ny written or recorded statement * * * made by a *24 person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness’s testimony”.
The prosecution’s chief witness in the Clair conspiracy case was Anthony Mastracco, a former confidant of defendants turned informer. On March 10 and 11, 1980, Mastracco was interviewed by the Assistant Attorney-General and a New York State Police officer in the course of their investigation into the Grillo homicide. These interviews, in which the Oneida County District Attorney’s office did not participate, were tape recorded and the tapes were placed in a file in the offices of the State Attorney-General’s Organized Crime Task Force. The recordings were not transcribed until some time after the verdict in the Clair case, and the prosecutor in that matter, the Oneida County District Attorney, had no knowledge of these interviews until they came to light during the 1982 prosecution of the defendants for the murder of Dawn Grillo. Thus, the statements of Mastracco taken by another prosecuting agency were not disclosed to defendants in the course of the Clair conspiracy prosecution.
The defendants maintain that the Mastracco statements of March 10 and 11, 1980, are Rosario material in the instant case because they contain statements relevant to Mastracco’s testimony in the Clair case, and because they contain information on prior crimes of Mastracco which would have been useful to the defense in cross-examination of Mastracco. They argue that the prosecutor’s failure to disclose the Mastracco statements constitutes "[ijmproper and prejudicial conduct * * * which * * * if it had appeared in the record, would have required a reversal of the judgment [on] appeal” (CPL 440.10 [1] [fD.
The prosecutor argues that the recorded statements of Mastracco were not made in the course of investigation or preparation of the Clair case and do not relate to the subject matter of Mastracco’s testimony in the Clair trial, and that the necessities of effective law enforcement required that they be kept confidential.
In People v Rosario (supra, at 289) the court held that a defendant is entitled to inspect the prior statements of a prosecution witness, whether or not his statements vary from his testimony in the case, "[a]s long as the statement relates to the subject matter of the witness’ testimony and contains nothing that must be kept confidential”. The character of a *25 statement is not to be determined by the manner in which it is recorded, nor by the presence or absence of a signature. (People v Consolazio, 40 NY2d 446, 453, supra.)
This court has reviewed the transcripts of the Mastracco statements of March 10 and 11, 1980, and the transcripts of Mastracco’s trial testimony, and concludes that a very small portion of the statement of March 10, 1980 does relate to the subject matter of Mastracco’s testimony. The statements are recorded in more than 180 pages of transcript, of which only 2 pages contain references to the Clair conspiracy related to Mastracco’s trial testimony. The prosecutor is correct in pointing out that the references to the Clair conspiracy in the statements arise in the context of a chronological relation to the Grillo murder. However, the references to the Clair conspiracy are not limited to the development of a chronological standard. Specifically, on pages 38 to 39 of the March 10, 1980 transcript, the State Police officer inquired of Mastracco where he first learned of defendant Bretti’s intent to arrange the murder of Richard Clair. The following colloquy ensued:
"F.P. [State Police officer] — And that was, ah, where?
"AM. [Anthony Mastracco] — When he called me to the house, he told me.
"F.P. — To the house?
"A.M. — Yeah. He says, ah, 'You gotta take care of Richie Clair.’ And, ah, it must have been two times he called me to the house because the first time he gave it to me alone at his house. The second night I went back to his house and says, 'No, I’m not doin’ this alone.’ And he gave me D’Amico. And, ah, I started arguin’ with him about D’Amico.
"F.P. — Uh huh.
"AM. — I says, 'Give me Danny or somebody, somebody that already proved himself or somethin’,’ you know. I didn’t * * * 'Cause I didn’t know that Danny was talkin’ either; well, before. And, ah, he just insisted on D’Amico. He says, 'Don’t worry, D’Amico’s cool. He can handle himself.’ I says, 'Alright.’ That’s when I really thought about it and I sent [sic] to see Bruce. * * * When I went down there Monday morning for the gun because of Joe Joe. I said, 'Well you might as well give me that gun now for Richie, because I had a beef with Joe Joe.’ And, ah, he straightened it out with Joe Joe.”
The quoted portion of the statement clearly relates to Mastracco’s trial testimony regarding his meetings with Bretti in connection with the Clair conspiracy, what was said at *26 those meetings, and his acquisition of the intended murder weapon. As such, that portion of the Mastracco statements constitutes Rosario material.* It is true that the major part of the statements is not discoverable because it constitutes "material which 'the necessities of effective law enforcement would require to be kept confidential’ ” (People v Ranghelle, 69 NY2d 56, 63; People v Poole, 48 NY2d 144). Thus, a CPL 240.50 motion for a protective order denying discovery as to the bulk of the statements would have been appropriate.
Having determined that a small portion of the statements constitutes Rosario material, I must then determine whether the prosecutor’s failure to disclose the statements is "improper and prejudicial conduct” in light of the fact that the prosecutor had no knowledge of the statements at any time during the Clair prosecution. At the time the Mastracco statements were taken by the Organized Crime Task Force, an agency unrelated to the Oneida County District Attorney’s office, the Task Force representative was investigating the Grillo murder. The recordings of the statements were retained by the State agency as evidence in the Grillo case.
At the hearing on this motion, the Oneida County District Attorney testified that, from the time of the Clair conspiracy indictment in February 1980 to mid-April 1980, he worked together with the Organized Crime Task Force on the Clair conspiracy because he believed that agency would be prosecuting the case. When he learned that there was not a sufficient jurisdictional basis for the Organized Crime Task Force to prosecute the Clair conspiracy case in mid-April 1980, the Oneida County District Attorney requested of the Task Force that they provide him with their entire file on the Clair case. The District Attorney received the file and was told he had everything in their possession on the case. The Mastracco statements were not provided to him.
This court does not doubt that the District Attorney had no knowledge of the Mastracco statements and that he acted in good faith in his efforts to acquire everything relevant to the Clair prosecution from the Organized Crime Task Force. Unfortunately, the Court of Appeals recent decision in People v *27 Ranghelle (69 NY2d 56, supra) renders the good-faith analysis moot and places a heavy burden upon the prosecution in Rosario cases. The Court of Appeals held that "the People’s good-faith effort to locate, identify and discover all Rosario material does not excuse their failure to produce covered material” (People v Ranghelle, supra, at 63). In Ranghelle (supra, at 64), the People’s good faith in attempting to obtain a report filed by the complaining witness in another precinct was said to be "irrelevant”.
Although the Ranghelle case differs from the instant case in that, in Ranghelle (supra), the prosecutor was aware of the existence of the report during the trial but was unsuccessful in efforts to produce it, the Ranghelle court went on to say that "society’s interest in maintaining criminal trials as truth-finding processes requires that the burden of locating and producing prior statements of complaining witnesses, filed with police agencies, remain solely with the People” (People v Ranghelle, supra, at 64). This language suggests to this court that little distinction is to be made between the situation in which the prosecutor knows of the existence of the Rosario material but cannot produce it, and the situation in which the prosecutor does not know of the existence of Rosario material in the files of another prosecuting agency and, thus, fails to produce it. Indeed, the Court of Appeals has held that the individual knowledge of a case possessed by assistants in the District Attorney’s office must be ascribed to the prosecutorial authority (People v Simmons, 36 NY2d 126, 132), and that "[a] defendant ought not be penalized because of any inadequacy of internal communication within the law enforcement establishment” (People v Spruill, 47 NY2d 869, 871; see also, People v McLaurin, 38 NY2d 123).
As the testimony at the hearing on the instant motion revealed that the Organized Crime Task Force and the Oneida County District Attorney’s office were working together on the Clair conspiracy case at the time the Mastracco statements were taken, and subsequent thereto, the Ranghelle case compels the conclusion that the District Attorney had the burden of "locating and producing” the statements and cannot be excused for his failure to do so under a "good faith” analysis. Thus, the District Attorney’s failure to disclose the relevant portion of the statements to defendants, despite his lack of knowledge, is "improper” conduct under CPL 440.10 (1) (f).
*28 CPL 440.10 (1) (f) further requires that the improper conduct of the prosecutor be "prejudicial conduct” which, "if it had appeared in the record, would have required a reversal of the judgment upon an appeal”. It is the conclusion of this court that the failure of the prosecutor to disclose the statements in question was not prejudicial to defendants, under the usual analysis, because the statements were not in conflict with trial testimony of Mastracco and because their use by defendants at trial would not have resulted in a different verdict given the overwhelming evidence of defendants’ guilt. However, the Court of Appeals in the Ranghelle case precludes the application of the traditional "prejudicial” analysis in cases in which there is a Rosario violation. Ranghelle (supra) holds that, when the People fail to deliver Rosario material to defense counsel, "the courts will not attempt to determine whether any prejudice accrued to the defense.” (People v Ranghelle, 69 NY2d 56, 63, supra.) Moreover, "[t]he failure constitutes per se error requiring that the conviction be reversed and a new trial ordered”. (People v Ranghelle, supra, at 63; see also, People v Perez, 65 NY2d 154; People v Jones, 128 AD2d 405.) The court’s very rigid application of the Rosario duty in Ranghelle, and its holding that no "prejudicial error” analysis may be undertaken, renders it clear that, if the failure in compliance with the Rosario rule in the instant case appeared in the record, it "would have required a reversal of the judgment upon an appeal therefrom”. There appearing no reason why the result on a CPL 440.10 motion to vacate judgment of conviction should differ from that which would occur on a direct appeal, the court is compelled by the Ranghelle decision, with great reluctance, to find that the prosecutor’s failure to discover and disclose the relevant portions of the Mastracco statements constitutes improper and prejudicial conduct which would have required a reversal of the judgment upon an appeal. (CPL 440.10 [1] [fj.) In so holding, this court’s finding is limited to the portions of the statements quoted herein and does not further expand the Rosario rule to encompass the witness’ statements on his own bad acts, as the defendants urge. Accordingly, defendants’ contentions that the FBI debriefing reports are statements of Mastracco constituting Rosario material are rejected, as they contain no reference to the Clair conspiracy and are not *29 related to Mastracco’s trial testimony. The court rejects the other contentions of defendants as without merit.
In light of the holding on the Rosario issue, it is not necessary to address defendants’ CPL 440.20 motions to vacate sentence.
Judgment vacated and new trial ordered.

 Although cognizant of the possibility that these statements were the "duplicative equivalent” of Mastracco’s Grand Jury testimony (People v Consolazio, 40 NY2d 446; People v Payne, 52 NY2d 743), I cannot so rule because the Grand Jury testimony was not adduced at the hearing on this motion.